UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| EDENS TECHNOLOGIES, LLC, ) | |
| ) | |
| PLAINTIFF ) | |
| ) | |
| v. ) | CIVIL NO. 09-188-P-H |
| ) | |
| KILE, GOEKJIAN, REED & ) | |
| McMANUS, PLLC, ) | |
| ) | |
| DEFENDANT ) | |

### DECISION AND ORDER ON DEFENDANT'S MOTION FOR A TRANSFER OF VENUE

This is a malpractice lawsuit. It arises out of an earlier patent infringement lawsuit in this District. The infringing (though ultimately settling) party in the earlier lawsuit has now sued its previous law firm. Pierce Atwood LLP, the law firm that is representing it now, previously represented the patent holder in the earlier infringement lawsuit. The law firm accused of malpractice in the earlier case has moved to dismiss the complaint against it for failure to plead the necessary elements of malpractice and on public policy grounds. It also moves for a transfer of venue to the U.S. District Court for the District of Columbia. I **GRANT** the Motion for a Transfer of Venue and order transfer to the District of Columbia, a more suitable forum for this litigation. I do not address the merits of the Motion to Dismiss, instead leaving that decision to the District of Columbia court.

**BACKGROUND**[1]

The plaintiff Edens Technologies, LLC ("Edens") is a Michigan company with its primary place of business in Michigan.  Compl. ¶ 2 (Docket Item 1).  The defendant law firm Kile Goekjian Reed & McManus, PLLC ("KGRM") is located in Washington, D.C.  Id. ¶ 3.  In its one-count Complaint,[2] Edens alleges that KGRM committed several acts of legal malpractice and professional negligence in an attorney-client relationship spanning roughly a two-year period.

Edens says that the attorney-client relationship with KGRM began in April 2007, when an associate attorney at KGRM allegedly gave legal advice to Edens.  Specifically, this associate reviewed a patent held by Edens' competitor, Golf Tech LLC ("Golf Tech"), reviewed Edens' plan to develop a similar product but "design around" the competitor's patent, and purportedly "gave the following 'legal advice' to Edens: 'You should be fine.'"  Id. ¶ 10.  Edens says that the associate communicated that advice to Edens indirectly through the associate's brother, an acquaintance of Edens' founding officer in Michigan.  Id. ¶ 11.  A month later, the brother, "again acting as a conduit for [the KGRM associate], conveyed further 'legal advice' to Edens:  'I think this means [you're] clear of the patent you are trying to avoid.'"  Id. ¶ 12.  The KGRM associate purportedly provided this legal advice to Edens "without carrying out the most fundamental steps in any non-infringement analysis, including a careful study of the patent specification and the patent file history."  Id. ¶ 14.

---

[1] For purposes of my analysis, I assume the truth of all facts alleged in Edens' Complaint.  See
*(continued on next page)*

2

Subsequently, Edens fully developed its product, and the patent-holding competitor, Golf Tech, sued Edens for patent infringement in this District. Id. ¶ 15. KGRM defended Edens in the patent lawsuit, a relationship Edens now asserts resulted in "inherent conflict" because KGRM would be "involved in defending [KGRM]'s own 'legal advice,'" and because the KGRM associate "was likely to be a witness in the litigation." Id. ¶ 16. Edens alleges that it did not give informed consent to KGRM regarding this purported conflict. Id. KGRM assigned to the litigation the same associate who had previously advised Edens using his brother as an intermediary, "despite the fact that he had very limited litigation experience," and KGRM then allegedly "failed to provide any meaningful supervision or oversight." Id.

During the infringement litigation, I held a Markman[3] hearing to construe the patent. Golf Tech LLC v. Edens Tech. LLC, 571 F. Supp. 2d 223 (D. Me. 2008). The case progressed through summary judgment, where I concluded on the undisputed facts that the underlying patent was valid and that Edens had infringed its competitor's patent on all of its infringement claims but one. Golf Tech LLC v. Edens Tech. LLC, 592 F. Supp. 2d 167 (D. Me. 2009). As to the one then-remaining claim, the patent owner chose not to proceed. The parties then advanced to discovery over damages and prepared for a damages trial.

---

Fitzgerald v. Barnstable Sch. Comm., 129 S. Ct. 788, 792 (2009).
[2] Edens brings this action under the diversity jurisdiction of this court. See 28 U.S.C. § 1332(a).
[3] Markman v. Westview Instruments, Inc., 517 U.S. 370 (1996).

Months after my summary judgment ruling, Edens filed a motion to reopen my decision because of "newly discovered prior art." Compl. ¶ 21. I denied the motion as untimely. Golf Tech LLC v. Edens Tech. LLC, 610 F. Supp. 2d 106 (D. Me. 2009). Edens now asserts that KGRM was negligent by failing to investigate prior art fully in order to present a thorough and timely invalidity defense in the patent litigation. Pl.'s Opp'n to Def.'s Mot. to Dismiss at 3 (Docket Item 12). Edens also alleges that KGRM was unprepared for the damages trial, "forc[ing] [Edens] to change its lead trial counsel . . . [to] its local counsel." Compl. ¶ 23.

On the eve of the damages trial, Edens settled the patent litigation. Id. ¶ 25; Joint Mot. for Entry of Consent J., Golf Tech LLC v. Edens Tech. LLC, Civ. No. 07-194-P-H (D. Me. 2009). Only its Maine lawyer represented Edens in the settlement. Decl. of Kurt E. Olafsen in Support of Pl.'s Opp'n to Def.'s Mot. to Transfer ¶ 6 (Docket Item 14). Edens, now represented by Pierce Atwood, the patent owner's lawyer in the settled litigation, filed this malpractice suit against KGRM the day before final judgment entered in the patent case. See Compl.; Judgment, Golf Tech LLC v. Edens Tech. LLC, Civ. No. 07-194-P-H (D. Me. 2009).

KGRM has moved to dismiss Edens' claim for failure to plead the necessary elements of malpractice and on public policy grounds, arguing that public policy dictates dismissal of a malpractice case where the plaintiff is represented by the same law firm used by its adversary in the underlying action. KGRM also has moved for a transfer of venue to the U.S. District Court for the District of Columbia. For reasons I detail below, I transfer this malpractice suit to the

District of Columbia. In deference to the transferee court, I leave resolution of the motion to dismiss to the District of Columbia forum.

**ANALYSIS**

KGRM requests that I transfer this case to the District of Columbia under my discretionary power to transfer a civil action "[f]or the convenience of parties and witnesses, in the interest of justice, . . . to any other district . . . where it might have been brought." 28 U.S.C. § 1404(a); see also Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (describing the discretionary nature of a § 1404 analysis). Factors to be considered in transferring a case include not only the convenience of the parties and witnesses but also "the availability of documents." Coady v. Ashcraft & Gerel, 223 F.3d 1, 11 (1st Cir. 2000). There is additionally, in the First Circuit, "a strong presumption in favor of the plaintiff's choice of forum." Id. Nonetheless, that presumption is not determinative and may be outweighed by the interest of justice or by the convenience of the parties and witnesses as encompassed by § 1404(a). Banjo Buddies, Inc. v. Renosky, 156 F. Supp. 2d 22, 24 (D. Me. 2001).

Although I conclude that a substantial part of the events prompting the malpractice suit occurred in Maine, and thus that venue in Maine is not "wrong" for purposes of § 1406,[4] I determine that transfer pursuant to § 1404(a) is prudent. Weighing the factors considered in such a discretionary transfer, I find that there is little reason for venue to lie in Maine. A closer question exists as

---

[4] 28 U.S.C. § 1406 provides that "[t]he district court of a district in which is filed a case laying
*(continued on next page)*

between Michigan and the District of Columbia, but I ultimately conclude that the District of Columbia is the proper destination.[5]

*(1)     Maine*

Venue is appropriate in a district in which a "substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(a). Here, the malpractice stems from a lawsuit filed and considerably litigated in this District. KGRM and Edens made appearances and filings before me and submitted themselves to the jurisdiction of this court. Edens says that KGRM was professionally negligent during that patent infringement action. Accordingly, Edens has sufficiently alleged in its Complaint that a "substantial part of the events or omissions" of malpractice occurred in this District, satisfying the technical requirement of venue under the statute. See id.

That does not mean, however, that a "substantial part of the events or omissions giving rise to the claim" did not occur elsewhere. Indeed, some of Edens' key allegations of negligence occurred much earlier than the patent infringement suit in Maine. The KGRM associate who allegedly provided negligent legal advice to Edens did so prior to Edens' development of the product that ultimately resulted in patent infringement liability. That legal advice came out of the D.C. law firm at which he was employed, and the advice was parlayed, via an intermediary, to Edens in Michigan. The KGRM associate's allegedly negligent

---

venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).
[5] Neither Edens nor KGRM suggests that venue exists in a federal forum other than Maine, Michigan, or D.C.

patent investigation and analysis took place at his desk in D.C. Edens proceeded to develop the infringing product through its principal place of business in Michigan, and ultimately Edens retained KGRM in Washington, D.C., to defend it in the ensuing infringement lawsuit. Throughout the patent litigation, KGRM worked from its office in D.C., and communicated with Edens in Michigan. Certainly, then, a greater portion of the "events or omissions giving rise" to the malpractice claim occurred in Michigan and D.C. rather than in Maine, making Michigan and D.C. alternative appropriate venues.

Given that Michigan and Washington, D.C., are such strong candidates to host this lawsuit, I am persuaded to consider a venue transfer under § 1404(a), contemplating the convenience of the parties and witnesses, the location of relevant documents, and otherwise evaluating the "interest of justice."[6] I note initially that the location of relevant documents is of little weight here. First, electronic document systems have alleviated the need for storage of paper records and have simplified the transfer of documents to the court. Second, any analysis of this factor in this case ends in a neutral result—KGRM's records are housed in D.C., some of Edens' records are in Maine (stored with its current counsel, Pierce Atwood, as well as its local counsel in the patent litigation), and some of Edens' records are located in Michigan where it maintains its place of business.

Most significantly weighing against keeping the case in Maine is the location of the parties and witnesses. Neither the plaintiff nor the defendant resides in

---

[6] Neither party suggests that I should consider any additional factors in my § 1404 analysis. See
*(continued on next page)*

7

Maine,[7] and, as conceded by Edens in its brief, each party's employees are located outside of Maine. See Pl.'s Opp'n to Def.'s Mot. to Transfer Venue at 6 (Docket Item 13). The KGRM attorneys involved in the patent litigation, key witnesses in this malpractice case, maintain their law practice outside of Maine and also live outside of Maine. Other potential witnesses who reside outside of the state include Edens' patent practice expert, damages expert, and technical expert from the underlying infringement action. Decl. of Bradford E. Kile ¶¶ 9-11 (Ex. A to Def.'s Mot. for a Transfer of Venue) (Docket Item 10-2). KGRM also states that, for purposes of this malpractice suit, it will call an expert witness from the pool of patent professionals in the D.C. area. Id. ¶ 12. Only one plaintiff's witness, Edens' local attorney in the patent case, resides in Maine. Olafsen Decl. ¶ 1.

Although I recognize that the plaintiff's choice of the District of Maine is entitled to some deference, I cannot conclude that Edens' choice of forum outweighs all the other factors in my § 1404(a) analysis. Because the plaintiff, the defendant, and all but one of the witnesses are located outside of Maine, and the greater weight of operative facts occurred outside of Maine both prior to and during the patent litigation, I determine that the interest of justice requires that I transfer this case from this District.[8]

---

Def.'s Mot. for a Transfer of Venue (Docket Item 10); Pl.'s Opp'n to Def.'s Mot. to Transfer Venue (Docket Item 13).

[7] Although Edens' current lawyers are located in Maine, Edens' attorney conceded at oral argument that convenience of counsel is not a relevant consideration in a venue transfer analysis.

[8] Edens argues that my familiarity with Maine law counsels in favor of keeping the case, in the interest of justice. See Pl.'s Opp'n to Def.'s Mot. to Transfer Venue at 7. This assumes, however, that Maine substantive law will apply to this malpractice suit, a conclusion that is uncertain given the genesis of the alleged malpractice in D.C. and Michigan.

Edens also argues that, in the interest of justice, I should compare the efficiencies of the
*(continued on next page)*

*(2)   Michigan or the District of Columbia*

Having determined that Maine is an unsuitable venue, I now turn to the choice between Michigan and Washington, D.C., conducting my analysis using the § 1404 factors. As previously noted, the location of the paper records in this case is a negligible factor. The location of the parties—one in Michigan and one in D.C.—should also be given neutral weight.

It is therefore the convenience of the witnesses that ultimately instructs my decision to transfer this case to the U.S. District Court for the District of Columbia. All of the potential witnesses listed by the parties, save one, live in the D.C. area. Edens' experts in the underlying patent litigation and KGRM's likely expert witness candidate for this malpractice action are all located in or around Washington, D.C.

Given the number of witnesses in D.C., I conclude that the scales tip in favor of transfer to the D.C. forum rather than Michigan where the plaintiff resides.

## Conclusion

I therefore **GRANT** Edens' Motion for a Transfer of Venue, and I hereby **ORDER** the transfer of this case to the U.S. District Court for the District of Columbia pursuant to my discretionary power under 28 U.S.C. § 1404(a). I also **ORDER** a stay of entry of this transfer order for a period of seven (7) days to allow

---

dockets of Maine and D.C. See Pl.'s Opp'n to Def.'s Mot. to Transfer Venue at 8. Although I recognize that this District has a lighter caseload than the District of Columbia and could certainly manage the case, I do not believe that factor is dispositive, given the strength of other factors in favor of D.C. as a forum.

9

opportunity for appeal to the Court of Appeals for the First Circuit.  If a notice of appeal is not filed within that time period, this transfer order shall immediately become effective.

**SO ORDERED.**

**DATED THIS 18TH DAY OF SEPTEMBER, 2009**

/S/ D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**