## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                            )

**EDENS TECHNOLOGIES, LLC,**       )
                                            )

                 **Plaintiff,**      )

                                            )

**v.**                                        )     **Civil Action No. 09-1850 (ESH)**

                                            )

**KILE GOEKJIAN REED &**        )
**MCMANUS, PLLC,**               )

                                            )

              **Defendant.**     )
_____)

### MEMORANDUM OPINION

Plaintiff Edens Technologies, LLC ("Edens"), a Michigan-based technology company, filed this action for legal malpractice against defendant Kile Goekjian Reed & McManus PLLC ("KGRM"), a law-firm based in Washington, D.C. Edens alleges that KGRM provided negligent advice and representation to Edens in connection with a patent infringement action brought by Golf Tech, LLC against Edens in the U.S. District Court for the District of Maine. Before the Court is defendant's motion to dismiss for failure to state a claim on the grounds that 1) the complaint fails to plead the elements necessary to sustain an action for legal malpractice; and 2) the action violates public policy because Edens has assigned this malpractice claim to Golf Tech, its former litigation adversary. Because the Court finds that this assignment contravenes public policy, defendant's motion to dismiss is granted, and the case is dismissed without prejudice.

### BACKGROUND

Edens is a manufacturer of golf simulation technology that is used in video games. (Compl. ¶ 8.) In 2007, Edens sought legal advice from KGRM about whether a device Edens

had developed infringed on a patent owned by Golf Tech, LLC (the "'211 patent"). (Compl. ¶¶ 9-10.) According to Edens, the non-lawyer brother of a KGRM associate, acting at the behest of the associate, advised Edens that "[y]ou should be fine." (Compl. ¶¶ 10-11.) The next month, the brother stated to Edens' founder that "I think this means your [*sic*] clear of the patent you are trying to avoid." (Compl. ¶ 12.) This allegedly negligent advice was conveyed by the brother in Michigan and was received by Edens in Michigan. Relying on this advice, Edens launched its device. (Compl. ¶¶ 13, 15.) Golf Tech, represented by the Maine-based law firm Pierce Atwood, sued Edens in federal court in Maine for patent infringement. (Compl. ¶ 16.)

KGRM represented Edens in the infringement action. (*Id.*)[1] Edens also retained Kurt E. Olafsen, an attorney in Maine, to serve as local counsel in the infringement action and provide advice regarding local rules and practices. (Declaration of Kurt E. Olafsen ("Olafsen Decl.") at ¶3 [Dkt. 14].) In defending Edens, KGRM did not assert patent invalidity as a defense (Compl. ¶ 18), but instead it pursued a non-infringement defense based on a claim construction argument. (*Id.* ¶ 20.) On August 1, 2008, Mr. Olafsen attended a meeting in Portland, Maine with Edens and KGRM attorneys. (Olafsen Decl. ¶ 5.) Mr. Olafsen avers that during the meeting, KGRM advised Edens not to search for additional prior art which may have rendered the '211 patent invalid and been "case dispositive," because KGRM believed that the one example of prior art it had already found was enough. (*Id.* ¶ 5; Compl. ¶ 19.) The Maine court rejected the claim construction argument made by KGRM, entered summary judgment in favor

---

[1] Other than its involvement in the patent infringement action, KGRM has no business contacts in Maine, no offices in Maine, no property or assets in Maine, and no KGRM attorney has ever been admitted to practice in Maine (except for the admission of two attorneys on a *pro hac vice* basis for the patent litigation). (*See* Def.'s Mot. to Change Venue, Ex. A (Declaration of Bradford E. Kile) ¶¶ 5-8.)

of Golf Tech on liability, and set a trial date on damages.  (Compl. ¶ 20.)  A week before trial,

KGRM notified the court that it wanted to file a motion for leave to reopen the invalidity issue

based on "newly discovered prior art."  (*Id.* ¶ 21.)  The court denied this motion as untimely and

said "[t]he omission here was Edens' failure to investigate the case thoroughly in a timely

manner. . . . That is a glaring omission, causing the unnecessary expenditure of resources and

delay, and there is no satisfactory excuse."  (*Id.* ¶ 22.)

   Edens, believing that KGRM was unprepared for trial, substituted its local counsel in

place of KGRM.  (Compl. ¶ 23.)  In light of the denial of the motion for leave to reopen the

invalidity issue, Edens believed that the evidence at a trial would support damages of at least

$370,000 with the possibility that the record would support an award of treble damages and

attorney's fees.  (*Id.* ¶ 24.)  In order to "save the company," Edens entered into a Settlement

Agreement with Golf Tech on May 7, 2009, and on May 14, the parties filed a joint motion for

consent judgment in the amount of $734,246.  (*Id.* ¶ 25.)

   The Settlement Agreement between Edens and Golf Tech provides that Golf Tech agrees

to accept as "satisfaction in full" for the $734,246 judgment "a partial assignment of the

proceeds, if any, of an action for legal malpractice to be filed by Edens against [KGRM]," with

Edens retaining any recovery in excess of the consent judgment amount.  (Settlement Agreement

at 2 ¶ 2.)[2]  The parties stipulated that there was sufficient evidence from which a jury could find

that Edens' infringement was willful and, therefore, it would be liable for treble damages.  (*Id.* at

1-2 ¶ 1.)  The malpractice action against KGRM, although filed with Edens named as the

plaintiff, is to be prosecuted by counsel selected by Golf Tech, and Edens must cooperate with

---

   [2] The Settlement Agreement has been filed with this Court.  There is no evidence that
Edens has paid any money in satisfaction of the consent judgment.

the suit. (*Id.* at ¶ 3.) Further, all decisions relating to this malpractice action are "controlled" by Golf Tech, with Golf Tech paying all litigation costs and attorneys' fees. (*Id.*)[3] Edens was represented by Mr. Olafsen during the settlement negotiations. (Olafsen Decl. ¶ 6.)

On May 14, 2009, the same day that the joint motion for consent judgment was filed, Edens commenced this malpractice action against KGRM in the U.S. District Court for the District of Maine. Edens is currently represented by Pierce Atwood, the same firm that represented Golf Tech in the patent litigation and settlement negotiations. The next day, May 15, 2009, the consent judgment in the underlying patent infringement action was approved. In this malpractice case, Edens asserts that KGRM negligently 1) advised Edens that its device would not infringe on Golf Tech's patent, and 2) failed to diligently search for prior art and to raise the invalidity defense.

This case was transferred from Maine to this district pursuant to 28 U.S.C. § 1404(a), because the Maine court found that the alleged negligent advice was formulated in Washington, D.C., and that this would be the most convenient forum for most of the witnesses. *Edens Tech., LLC v. Kile, Goekjian, Reed & McManus, PLLC*, No. 09-cv-1850, 2009 WL 3065211, at *4 (D. Me. Sept. 18, 2009). Presently before the Court is defendant KGRM's motion to dismiss Edens' complaint on two grounds. First, KGRM argues under Federal Rule of Civil Procedure 12(b)(6) that the complaint fails to state a claim upon which relief can be granted. Second, KGRM argues that the cause of action should be dismissed as contrary to public policy because of the assignment by Edens to Golf Tech of its legal malpractice claim. Since the Court agrees that the

---

[3] In the Settlement Agreement, Golf Tech also granted Edens a license to manufacture, market, and sell the golf swing analyzers under the '211 patent in exchange for a royalty for each unit sold. (Settlement Agreement at 2 ¶ 4.)

assignment is contrary to public policy, it need not address defendant's Rule 12(b)(6) argument.

## ANALYSIS

### I.      CONFLICT OF LAWS

In his opinion transferring venue, Judge Hornby of the Maine district court questioned the applicability of Maine law "given the genesis of the alleged malpractice in D.C. and Michigan." *Edens Tech.*, 2009 WL 3065211, at *5 n.8. This Court ordered supplemental briefing on the choice of law issue to determine which state's laws apply to this case and how that affects the outcome. (*See* Nov. 2, 2009 Minute Order.)[4] Plaintiff continues to argue that Maine's substantive law applies but maintains that even if D.C. or Michigan law applies, the result is the same – legal malpractice claims are assignable. Defendant argues that D.C. substantive law applies to bar this assignment, but that even if this case is governed by Maine law, the assignment still cannot be enforced.

A thorough review of the briefing reveals that the choice-of-law issue is actually what is known as a "false conflict." *Century Int'l. Arms, Ltd. v. The Federal State Unitary Enter. State Corp. 'Rosvoorouzhenie'*, 172 F. Supp. 2d 79, 90 (D.D.C. 2001). Although the analysis differs in each state, the Edens/Golf Tech assignment would be invalid as a matter of public policy no matter which jurisdiction's law is applied. In reaching this conclusion, the Court will first address the  problems raised by the assignment of a legal malpractice claim, and in particular, the assignment at issue here, and it will then evaluate this assignment under the laws of each of the

---

[4] When a case is transferred under § 1404(a) on convenience grounds, the transferee court must apply the law of the transferor state, including the transferor state's choice of law rules. *Ferens v. John Deere Co.*, 494 U.S. 516, 525 (1990). Maine follows the Restatement (Second) of Conflicts of Laws § 145 and the "'most significant contacts and relationships' approach in determining choice of law." *Walker v. Unum Life Ins. Co. of America*, 530 F. Supp. 2d 351, 353 (D. Me. 2008) (citing *Flaherty v. Allstate Ins. Co.*, 822 A. 2d 1159, 1165 (Me. 2003)).

three jurisdictions.

II.   **PUBLIC POLICY IMPLICATIONS OF ASSIGNING LEGAL MALPRACTICE CLAIMS TO A FORMER LITIGATION ADVERSARY**

The issue in this case is not whether legal malpractice claims can be assigned, but rather, whether a company can assign its legal malpractice claim to a former litigation adversary as a part of the settlement of that litigation.  The usual motivation for assignment in these cases is "the plaintiff's inability to collect a judgment from an insolvent, uninsured (or under-insured) defendant," *Zuniga v. Groce, Locke & Hebdon*, 878 S.W. 2d 313, 316 (Tex. Ct. App. 1994), and the "two principle goals" served by allowing such assignments are "enabling the defendant-client to extricate himself from liability, and funding the original plaintiff's judgment."  *Id.* at 317; *see also Tate v. Goins, Underkofler, Crawford & Langdon*, 24 S.W. 3d 627, 633 (Tex. App. 2000). Despite these potentially legitimate reasons for assigning a legal malpractice claim to a former adversary, the majority of courts have found that the costs to society outweigh the benefits and that overriding public policy concerns render these types of assignments invalid.[5]  For the reasons discussed below, this Court agrees with the reasoning of those courts which have invalidated such assignments as contrary to public policy.

The most compelling argument against this type of assignment is that "[p]ermitting an assignment of a legal malpractice claim to the adversary in the underlying litigation that gave rise to the legal malpractice claim . . . creates the opportunity and incentive for collusion in stipulating to damages in exchange for an agreement not to execute on the judgment in the

---

[5] For detailed surveys of the case law with respect to the assignment of legal malpractice claims and the public policy implications, *see Gurski v. Rosenblum and Filan, LLC*, 885 A. 2d 163 (Conn. 2005); *Kommavongsa v. Haskell*, 67 P. 3d 1068 (Wash. 2003); *Zuniga*, 878 S.W. 2d at 316; *Goodley v. Wank & Wank, Inc.*, 62 Cal. App. 3d 389, 397-98 (Cal. Ct. App. 1976).

underlying litigation." *Gurski*, 885 A. 2d at 174.  Because the "losing" party in the consent judgment will never have to pay, nothing prevents the parties from stipulating to artificially inflated damages that could serve as the basis for unjustly high damages in the "trial within a trial" phase of the subsequent malpractice action.

While it is not necessary to find that the consent judgment in the underlying litigation was the product of collusion between Edens and Golf Tech or that the stipulated damages were unreasonable, the Court "merely observes that the opportunity and incentive for collusion were certainly present." *Kommavongsa*, 67 P. 3d at 1077.  Edens had no incentive to contest the extent of damages, because as long as it secured from Golf Tech a promise not to execute on the judgment, Edens would never have to pay anything.  It is evident from the Settlement Agreement that there was no reason for Edens to try to minimize damages.  Edens and Golf Tech stipulated that there was sufficient evidence from which a jury could find that Edens' infringement of the '211 patent was willful, thereby allowing an award of treble damages.  Edens' complaint, however, reveals that it retained KGRM in order to *avoid* infringing the '211 patent, and, therefore, any infringement would have been unintentional and solely the product of negligent advice by KGRM.  Thus, Edens' own complaint is wholly inconsistent with the stipulation in the Settlement Agreement that Edens willfully violated Golf Tech's patent.  This obvious inconsistency at least raises a serious concern that the stipulation was not based on a fair assessment of the merits, but was reached in order to increase the damages in this action.

The second persuasive policy reason for prohibiting this assignment is that it is "fraught with illogic."  *See Kracht v. Perrin, Gartland & Doyle*, 219 Cal. App. 3d 1019, 1025 (Cal. App. 1990) (citation omitted).  Applying the reasoning of the Texas Court of Appeals to this case, the Court notes that:

In each assigned malpractice case, there would be a
demeaning reversal of roles.  The two litigants would have to take
positions diametrically opposed to their positions during the
underlying litigation because the legal malpractice case requires a
"suit within a suit."  To prove proximate cause, the client must
show that his . . . defense would have been successful "but for" the
attorney's negligence. . . . In the underlying [infringement] case,
[Golf Tech's] position was: we have a valid [patent] and we will
win the case on the merits even if [Edens'] lawyer represents it
capably.  But to prove proximate cause in the legal malpractice
case, [Golf Tech, as assignee, through its Pierce Atwood attorneys]
would have to take the contrary position: we would have lost our
[patent infringement] case and [Edens] would have prevailed if its
lawyers had capably defended our suit.  [Edens] would have won
the [infringement] case if only its lawyers had used due care and
competence.

For the law to countenance this abrupt and shameless shift
of positions would give prominence (and substance) to the image
that lawyers will take any position, depending upon where the
money lies, and that litigation is a mere game and not a search for
truth.  It is one thing for lawyers in our adversary system to
represent clients with whom they personally disagree; it is
something quite different for lawyers (and clients) to switch
positions concerning the same incident simply because an
assignment and the law of proximate cause have given them a
financial interest in switching.

*Zuniga*, 878 S.W. 2d at 318 (internal citations omitted).  This duplicitous shifting of positions

would be especially troublesome if this action ever reached a jury, for, as noted by the Supreme

Court of Indiana:

[T]he trial of this assigned malpractice claim would feature a
public and disreputable role reversal.  The mechanics of trying this
case would magnify the least attractive aspects of the legal system.
. . . Because of the unique nature of the trial within a trial [the]
change in position would be obvious to all the jurors hearing the
evidence. . . . They would rightly leave the courtroom with less
regard for the law and the legal profession than they had when they
entered.

*Picadilly, Inc. v. Raikos*, 582 N.E. 2d 338, 344-45 (Ind. 1991), *abrogated on other grounds by*

*Liggett v. Young*, 877 N.E. 2d 178 (Ind. 2007).

In the underlying infringement action, Golf Tech, represented by Pierce Atwood, argued that Edens' golf simulation technology infringed its valid patent and that it should prevail on the merits. Now, however, Golf Tech, as assignee, is alleging (through the same Pierce Atwood attorneys) that it would *not* have prevailed in the patent infringement action but for the negligence of KGRM in representing Edens. This is the very type of disreputable and illogical role reversal that has understandably troubled many courts. Furthermore, the Settlement Agreement itself is "fraught with illogic." Edens stipulated in the Settlement Agreement that there was sufficient evidence that it willfully infringed the '211 patent. In this malpractice action, however, Edens is arguing the opposite position that it would have been successful in the underlying litigation had KGRM timely asserted that the '211 patent was invalid.[6]

In addition to collusion and role-reversal concerns, courts have identified several other public policy problems associated with the assignment of legal malpractice claims to former litigation adversaries. These policy concerns are more speculative than the two discussed above, but they nonetheless lend further support to KGRM's position that these assignments should be barred as a matter of public policy.

One concern is that the prospect of assignment would make it too risky for lawyers to represent under-insured or judgment-proof defendants because the only way for the client to satisfy a losing judgment would be to assign his or her claim for malpractice. *See Zuniga*, 878

---

[6] Edens' complaint tries to avoid this irreconcilable position by not explicitly alleging invalidity, but instead, the complaint states that the defense would have been "case dispositive." (Compl. ¶ 19.) Of course, a defense is only "case dispositive" if it works and the defense would only have worked if the patent was invalid. Edens' current reluctance to allege that the '211 patent is invalid is understandable, given that this litigation is under the complete control of Golf Tech who, naturally, wants to avoid arguing that its own patent is invalid.

S.W. 2d at 316.  In turn, insolvent defendants could have difficulty finding adequate

representation because lawyers would be afraid that their clients would assign malpractice claims

against them.  *Id.*; *see also Gurski*, 885 A. 2d at 170.  Courts have also cited the "unique and

personal nature of the relationship between attorney and client and the need to preserve the

sanctity of that relationship as a reason for prohibiting the assignment."  *Gurski*, 885 A. 2d at

169 (citing cases).  Courts have recognized "the incompatibility of the assignment and the

attorney's duty of loyalty and confidentiality," *id.*, and "have cautioned that permitting the

assignment of legal malpractice claims would encourage the commercialization of such claims

and in turn spawn increased and unwarranted malpractice actions."  *Id.* at 170 (citing cases).

Additionally, courts have noted that "'[a] party should not be permitted to transmute a claim

against a penniless adversary into a claim against the adversary's wealthier lawyer based on the

lawyer's supposed negligence toward the adversary.'"  *Kommavongsa*, 67 P. 3d at 1077 (quoting

*Alcman Servs. Corp. v. Samuel H. Bullock, P.C.*, 925 F. Supp. 252, 258 (D.N.J. 1997)).

Although the weight of authority counsels against permitting the assignment of legal

malpractice claims to former adversaries, a minority of jurisdictions have upheld these

assignments.  For example, in *New Hampshire Insurance Co. v. McCann*, an insurance company,

acting on behalf of its client, agreed to a $220,000 settlement with a plaintiff who was alleged to

have been injured by the client's use of lead paint in an apartment building.  707 N.E. 2d 332,

333-34 (Mass. 1999).  As part of the settlement, the insurance company assigned to plaintiff all

of its rights for legal malpractice against its attorneys.  *Id.*  The basis of the malpractice claim

was the attorney's failure to secure the client's release from personal liability in a related

settlement eleven years earlier.  *Id.*  The Supreme Judicial Court of Massachusetts discounted the

public policy concerns described above and held that this assignment should not be barred as a

matter of law.  *Id.* at 336.  The court thought that "providing shelter for attorneys by prohibiting the voluntary assignment of malpractice claims . . . would actually diminish public confidence in the profession by creating the perception that the system provides attorneys with unjustified special protection."  *Id.* at 337.  *See also Hedlund Mfg. Co., Inc. v. Weiser, Stapler & Spivak*, 539 A. 2d 357, 359 (Pa. 1988) ("We will not allow the concept of the attorney-client relationship to be used as a shield by an attorney to protect him or her from the consequences of legal malpractice.  Where the attorney has caused harm to his or her client, there is no relationship that remains to be protected."); *Greevy v. Becker, Isserlis, Sullivan & Kurtz*, 240 A.D. 2d 539, 541 (N.Y.A.D. 1997) (permitting assignment of a malpractice claim to former adversary because the assignment did not violate public policy).

The *McCann* court rejected the argument that allowing the assignment of a malpractice claim to a former adversary would always create a "distasteful role reversal," because the merits of the underlying case in *McCann* were irrelevant to the malpractice issue.  *McCann*, 707 N.E. 2d at 337.  While that analysis was correct in *McCann*, where the malpractice consisted of a lawyer's failure to secure a release from personal liability in a previous settlement agreement and had nothing to do with the merits of whether the client *actually* violated rules against the use of lead paint, it does not apply here.  In this case, the merits of the underlying action are inextricably intertwined with the allegations of malpractice, and will require Golf Tech to take a position inconsistent with its position in the underlying action.  Thus, the disreputable and illogical role reversal, while not a problem in *McCann*, is present in this case.  *See Gurski*, 885 A. 2d at 173 (noting that many of the courts that do not have a *per se* rule barring assignments have recognized the public policy concerns with these assignments, but merely did not have occasion to apply those concerns in their specific cases).  For, as persuasively argued in *Gurski*,

to allow an "assignee to [control] a claim for legal malpractice when she was the very party who benefitted from that malpractice in the underlying litigation, would engender a perversion that would erode public confidence in the legal system."  885 A. 2d at 174.

Having found that this assignment is contrary to public policy, this Court next evaluates the validity of this assignment under the laws of each of the three relevant jurisdictions.

## III.   LEGALITY OF ASSIGNMENTS OF LEGAL MALPRACTICE ACTIONS IN MICHIGAN, WASHINGTON, D.C., AND MAINE

### A.   Michigan

Michigan law prohibits the assignment of legal malpractice claims.  *See Joos v. Drillock*, 338 N.W. 2d 736, 737 (Mich. App. 1983).  In *Joos*, a jury found the defendants liable for an automobile accident and awarded damages in an amount above their insurance policy limits.  *Id.* Because they could not pay the excess judgment, defendants assigned their rights against their attorney for malpractice to the plaintiff.  *Id.*[7]  The plaintiffs then commenced a malpractice action against defendants' attorney, alleging that he had failed to notify his clients of settlement offers, failed to settle the case within policy limits, and failed to make proper discovery.  *Id.*  The court held that this assignment was invalid as against public policy, citing the personal nature of legal services, the potential for converting malpractice claims into a commodity, the likelihood that assignment would increase the number of malpractice claims, and the detriment to the attorney-client relationship caused by the looming threat of assignment.  *Id.* at 738 (citing

---

[7] The language of the assignment described it as a "partial assignment" whereby the defendants retained all rights against their attorney for any amount above the jury's verdict. *Joos*, 338 N.W. 2d at 737 n.1.  The Court of Appeals of Michigan ignored this label and treated the arrangement as a complete assignment when considering the public policy implications. *See id.*  As discussed herein, this Court has adopted a similar approach to the Edens/Golf Tech assignment.

-12-

*Goodley*, 62 Cal. App. 3d at 397-98).

Four years later, the Court of Appeals of Michigan distinguished the complete
assignment of a malpractice claim from an agreement to assign only a portion of the recovery
from a legal malpractice action.  *Weston v. Dowty*, 414 N.W. 2d 165, 167 (Mich. App. 1987).  In
*Weston*, Ella Sharpe was injured in a home owned by the Weston family and brought suit against
them for negligence.  *Id.* at 166.  A default was entered against the Westons because their
attorney failed to comply with discovery orders and the parties entered into a $200,000 consent
judgment.  *Id.*  In order to satisfy the judgment, the Westons agreed to pay $9,000 up front and
pursue a malpractice action against their attorneys.  *Id.*  The agreement further provided that the
Westons agreed to "assign any and all valuable consideration and/or monies that may be
received from [the malpractice] action less their costs in attorneys fees sustained in the above
captioned case and that said funds will be assigned to [Sharpe] and her attorney."  *Id.*  In
exchange, Sharpe signed a covenant not to sue the Westons for any amount beyond the $9,000.
*Id.*  In the malpractice action, the defendant-attorney argued that this was an invalid assignment
of a legal malpractice claim in violation of *Joos*.  *Id.*

The *Weston* court upheld this agreement and distinguished it from *Joos* on the grounds
that Weston "did not assign the claim or cause of action to Sharpe [but] merely agreed to give
Sharpe any proceeds recovered."  414 N.W. 2d at 167.  The court noted that the malpractice
action was brought by the Westons and that the Westons were the "real party in interest" because
they contracted for the attorney's services and they suffered the loss as a result of the attorney's
negligence.  *Id.*  Because the attorney owed a duty only to his clients, it was irrelevant that
Sharpe retained a beneficial interest in the recovery.  *Id.*

Despite Edens' argument to the contrary, the Court finds the assignment at issue here to

be governed by *Joos* and not by *Weston*.  Although this suit is brought in Edens' name, Golf

Tech wields all of the decision-making power.  Golf Tech "controls" this litigation, selected the

attorneys, and can compel Edens' cooperation.  In *Weston*, on the other hand, there is nothing to

indicate that the plaintiff in the underlying negligence action retained any decision-making

power over the malpractice action.  Moreover, *Weston* did not implicate concerns about parties

taking inconsistent and illogical positions because the allegations of malpractice had nothing to

do with the merits of the underlying case.  The assignment between Edens in Golf Tech is much

more than a mere assignment of the proceeds, and thus, this Court believes that under Michigan

law, it would be found to be invalid.[8]

## B.        Washington, D.C.

Judge Friedman of this Court considered the assignability of legal malpractice claims and

concluded that "public policy does not prohibit the assignment of a legal malpractice claim and

District of Columbia law does not prevent it."  *Richter v. Analex Corp.*, 940 F. Supp. 353, 358

(D.D.C. 1996).  In *Richter*, Analex Corporation bought "certain assets" from another company

named Analex D.C.  *Id.* at 355-56.  At issue in that case was whether those assets could include

legal malpractice claims that Analex D.C. had against its former lawyer Richter.  *Id.*  Judge

Friedman held that Analex Corporation, as an assignee, could assert a legal malpractice claim

---

[8] Because Golf Tech has complete control over this litigation and would benefit from any
recovery, this case is analogous to those which "have identified the 'meaningless distinction'
between an assignment of a cause of action and an assignment of recovery from such an action,
which distinction is made merely to circumvent the public policy barring assignments."  *Gurski*,
885 A. 2d at 178 (quoting *Town & Country Bank of Springfield v. Country Mutual Ins. Co.*, 459
N.E. 2d 639, 641 (Ill. App. 1984));  *see also Tate*, 24 S.W. 3d at 633 (rejecting assignee's
argument that it had merely been assigned the proceeds of a malpractice action because the
assignor gave the assignee "absolute control over the litigation, including the unfettered right to
settle the malpractice suit on terms as [the assignee] determines" and the arrangement created the
"same evils" as other invalidated assignments).

against Richter based on his alleged malpractice while representing Analex D.C.  *Id.*  Based on this authority, Edens argues that its assignment to Golf Tech is permissible.

     *Richter*, however, expressly confines its holding to the narrow factual circumstances of that case, and at no point in his opinion does Judge Friedman opine that District of Columbia law permits the assignment of legal malpractice claims in every situation.  Rather, he acknowledged that "[t]he courts that have barred the assignment of legal malpractice claims have relied primarily on *factors not present in this case*, including the fear that parties will sell off claims, *particularly to opponents* or . . . unrelated third parties, and a concern about jeopardizing the personal nature of legal services."  *Id.* at 357 (emphases added).  Those fears were not present in *Richter* because the malpractice claim was not bartered or sold to an unrelated third party and Analex Corporation and Analex D.C. were never opponents in litigation during which the alleged malpractice occurred.  *Id.* at 358.  It was merely a sale of a corporation's assets.  *Richter*, therefore, leaves ample room for certain types of assignments to be prohibited and, given the policy problems explained above, this Court concludes that the assignment between Edens and Golf Tech would be invalidated as a matter of public policy under D.C. law.

     **C.**    **Maine**

     Of the three states whose laws might apply to this action, Maine appears to have the only relevant case which would support Edens' position.  *Thurston v. Continental Casualty Co.*, 567 A. 2d 922 (Me. 1989).  However, this Court finds the Edens/Golf Tech assignment to be factually distinguishable from *Thurston*.  In *Thurston*, a products liability action, summary judgment was entered against defendant 3K Kamper Ko. for an amount far in excess of its insurance policy limits.  *Id.* at 923.  3K's insurance carrier, Continental Casualty Co., had failed to settle the case within the policy limits, and defendant was unable to pay the excess judgment.

*Id.* The shareholders of 3K agreed to assign the company's rights against Continental Casualty for inadequate legal representation to the injured plaintiff because it otherwise had no assets with which to satisfy the outstanding judgment. *Id.* The plaintiff, as 3K's assignee, sued Continental Casualty for legal malpractice and failure to settle. *Id.* The Supreme Judicial Court of Maine held that "there is no reason to prohibit the assignment of a legal malpractice claim *in a situation such as this.*" *Thurston*, 567 A. 2d at 923 (emphasis added). The court observed that the plaintiff had "an intimate connection with the underlying lawsuit" and that allowing an assignment in this situation would not establish a "general market" for these types of claims. *Id.* It reasoned that the most efficient way to enable the plaintiff to collect her award was to allow her to sue Continental Casualty as 3K's assignee because she had "a clear interest in the claim," as well as the "time, energy, and resources to bring the suit." *Id.*

While *Thurston* provides some support for allowing the assignment of legal malpractice claims to former litigation adversaries, the two most problematic aspects of the assignment in this case – the opportunity for collusion and the brazenly inconsistent positions asserted by Golf Tech and Pierce Atwood – did not underlie the court's rationale in *Thurston*. First, there was no risk in *Thurston* that the parties colluded to specify unreasonable damages, because the damages were awarded *by the court* on summary judgment. It was only after this judgment was awarded that 3K realized it would be unable to pay and agreed to assign its malpractice claim to its former adversary. Therefore, 3K had every incentive and opportunity to argue for no liability or minimal damages. Here, on the other hand, Edens assigned its malpractice claim to Golf Tech and actually filed the claim *before* the consent judgment was even approved by the district court. Edens, as the "losing" party in the consent judgment, had, unlike *Thurston*, no incentive to seriously litigate the amount of damages because Golf Tech's covenant not to execute the

judgment serves to shield Edens from ever having to pay this judgment.[9]

Second, the malpractice claim in *Thurston* was not "fraught with illogic."  In both the underlying products liability action and the subsequent malpractice case, the *Thurston* plaintiff consistently argued that 3K had been negligent in manufacturing and designing its products.  In pursuing Continental Casualty for malpractice, the plaintiff could always maintain that the products were defective and that she was rightfully entitled to relief.  The crux of the malpractice claim was simply that the case should have been settled sooner, not that the products were not defective.  By contrast, Golf Tech, through Edens and Pierce Atwood, is now arguing that Edens did not infringe Golf Tech's patent and that Edens would not have had to pay damages but for KGRM's negligent representation.  The same attorneys who zealously defended their client Golf Tech's patent in the underlying action are now in a position of implying that the patent was invalid.  This is precisely the type of "public and disreputable role reversal" that was not present in *Thurston*, but has troubled many courts.  *See, e.g.*, *Picadilly,* 582 N.E. 2d at 344-45.

Finally, *Thurston*'s language is limited to its facts and does not represent a sweeping policy decision by the courts of Maine to permit the assignment of legal malpractice claims to an adversary in all situations.  The *Thurston* court wrote that it would not prohibit the assignment of a legal malpractice claim "in a situation such as this."  567 A. 2d at 923.  Therefore, it arguably anticipated a situation where different types of assignments would be prohibited, and this could well be the best example of just such an assignment.

---

[9] KGRM argues that the $743,246 settlement is "absurd" and "far in excess of anything Edens' economic expert . . . would have testified to at trial."  (Def.'s Mot. to Dismiss at 7.)

## IV.    DISMISSAL WITHOUT PREJUDICE IS THE PROPER REMEDY

Having found the assignment between Edens and Golf Tech to be invalid, this Court will dismiss the malpractice claim without prejudice.  Although some courts have dismissed assigned malpractice claims outright, *see, e.g.*, *Gurski*, 885 A.2d at 178, this Court finds that Edens should still be permitted to pursue KGRM for malpractice because prohibiting the assignment of legal malpractice claims is not intended to "protect lawyers from the consequences of their own legal malpractice." *Kommavongsa*, 67 P. 3d at 1080.  However, if Edens elects to re-file a malpractice claim against KGRM, it cannot be controlled in any way by Golf Tech or be represented by attorneys associated with Golf Tech.  If Edens ultimately obtains a judgment against KGRM, nothing prohibits Edens from *then* assigning the judgment to Golf Tech as satisfaction for the outstanding judgment in the patent infringement action.  *See id.*  The Court recognizes that this remedy does not eliminate the risk of collusion in future cases completely, but it does provide the client with more of an incentive to "seriously litigate the amount of damages" in the underlying suit because now the client bears the risk of not recovering in the legal malpractice action.  *Id.* at 1079.  Furthermore, it eliminates the public and disreputable role reversals that have concerned many courts.

### CONCLUSION

For the reasons stated above, defendant's motion to dismiss is granted and the case is dismissed without prejudice.

_____/s/_____
ELLEN SEGAL HUVELLE
United States District Judge

Dated: December 22, 2009